376 So.2d 1382 (1979)
Frank Tyrone BROWN
v.
STATE.
6 Div. 985.
Court of Criminal Appeals of Alabama.
October 2, 1979.
On Remandment November 20, 1979.
F. Wayne Keith of Keith, Keith & Keith, Birmingham, for appellant.
Charles A. Graddick, Atty. Gen., and George Hardesty, Jr., Asst. Atty. Gen., for appellee.
LEIGH M. CLARK, Retired Circuit Judge.
The only issue presented on this appeal is whether the trial court was in error in setting aside a sentence imposed upon defendant, and entered of record, and thereafter imposing a sentence severer than the one previously imposed. The time and other circumstances of such action, as compared with the time and circumstances of somewhat similar action found in authorities cited by the parties and other authorities, will appear in the course of this opinion.
At approximately 9:45 A.M. on November 3, 1978, a jury returned a verdict finding appellant-defendant guilty of robbery. After the jurors were polled and released, the following occurred:
"THE COURT: You heard the verdict of the jury, Mr. Brown, `We the jury find the Defendant guilty of robbery as charged in the indictment.' Signed, Charlie Joe Mills, foreperson. Have you anything to say as to why sentence should not be pronounced against you at this time?
"THE DEFENDANT, MR. BROWN: I am not guilty.
"THE COURT: All right. It is the judgment and sentence of the Court that the Defendant be imprisoned in the penitentiary for a term of ten years and that he be given credit for all time spent in jail unless he was there for another offense. *1383 Wait just a minute. I do want to say that your attorney did a good job on this case. You have forty-two days from today in which to appeal. And, if you do appeal and you can't afford an attorney, the Court will appoint an attorney to represent you without cost. But, remember that is forty-two days from today or six weeks.
"THE DEFENDANT, MR. BROWN: I want to appeal.
"THE COURT: Would you like to announce it now?
"THE DEFENDANT, MR. BROWN: Yes.
"THE COURT: All right. Can you afford an attorney?
"THE DEFENDANT, MR. BROWN: No, sir.
"THE COURT: Would you like to have an attorney appointed to represent you?
"THE DEFENDANT, MR. BROWN: Yes.
"THE COURT: Would you like to handle it, Mr. Keith?
"MR. KEITH: Yes, sir.
"THE COURT: Would you like Mr. Keith to handle your appeal?
"THE DEFENDANT, MR. BROWN: Yes, sir.
"THE COURT: All right, Mr. Keith will be appointed to represent you on appeal. And, I am giving notice of it now that you are appealing."
Thereafter, for about two pages of the record, there was a colloquy among the court and counsel for the parties in which it appears that counsel for defendant was taking the position that the jury should have fixed the punishment rather than the court. The record then shows the following:
"THE COURT: All right, thank you Mr. Keith, I think you have done a good job on this case. And you are appointed to represent him on appeal.
"(Whereupon, there was a brief discussion between the attorneys and the court and Mr. Barber was recalled to the courtroom)."
It should be noted at this time that it appears that the "brief discussion between the attorneys and the court" to which reference is made in the parenthesized part of the record just quoted was as to something that had transpired immediately preceding such "brief discussion." From our understanding of the contentions of the parties as shown by the record and their briefs on appeal, we conclude that Mr. Barber, the Assistant District Attorney who actively prosecuted the case, had for good cause excused himself from the courtroom at the time of the rendition of the verdict and at the time of the imposition of the sentence; but just before, or as a part of, the mentioned "brief discussion," he returned and informed the court that the defendant had a previous criminal record that should be considered in making a determination of the appropriate punishment to be fixed within the statutory requirement of "imprisonment in the penitentiary for not less than ten years, or as otherwise specified by law." Code 1975 § 13-3-110.
After the mentioned "brief discussion," the record continues:
"THE COURT: All right.
"MR. KEITH: Judge, when we came in here and the jury came back with their verdict, the State of Alabama was ably represented by Mr. George Jones sitting in for Mr. David Barber. He came up here and he told Your Honor that he didn't see anything wrong with this. He told youinformed him that there was no weapon involved in this case and there was very mild circumstances in this case. Honorable George Jones for the State of Alabama said I don't see anything wrong with this.
"THE COURT: Well, I am going to set it aside and I am going to check on whether I have the authority to do that. But, I am going to set it aside and ask for a probation report.
"MR. KEITH: We would object to that.
"THE COURT: If I don't have authority, this will remain, but, I am going to see if I have authority.
"MR. KEITH: Well, the sentence has been imposed.

*1384 "THE COURT: Off the record.
"(Whereupon, there was an off the record discussion.)
"THE COURT: On the record.
"MR. KEITH: We would object to it being re-opened; the sentence has already been imposed in this case and the commitment order has already been signed, and delivered to the bailiff to take the prisoner back upstairs. And, the prisoner has been down here conferring with his family, talking with his family. And, we would object to it being re-opened.
"THE COURT: All right. I will see the case that Mr. Barber gets.
"(Whereupon, the Court was in recess, and at 2:02 P.M. the Defendant was brought in with his attorney, and the following was had and done before the Court.)
"THE COURT: This morning immediately after I sentenced this Defendant, additional information came to my attention which I did not know about concerning the Defendant's previous record. Mr. Barber came into the courtroom and brought the material at that time. So, before the Defendant left the courtroom, I informed him that I was setting aside the sentence that I had announced this morning of ten years, that I was going to ask for a pretrial sentence report from the Probation Officer. And, to be given to the Court by December 15, 1978. And, the sentence will be suspended and will be rendered on December 15, 1978, at 9:00 A.M."
There was a continuance from the setting on December 15, 1978, to January 12, 1979, at which time defendant, being present with his attorney in open court, was sentenced to imprisonment in the penitentiary for fifteen years. From the time it appeared that the court was considering changing its sentence until the sentence was increased and afterwards, defendant-appellant made it known at every reasonable opportunity that he objected to such action.
Both parties cite a number of authorities in support of their respective contentions. We fail to find in any of them, or in any other authority, such a state of facts that the determination made therein would be conclusively dispositive of the question now before us, but we endeavor to analyze most, if not all, of them in our effort to reach a correct conclusion herein.
Appellant relies upon State ex rel. Curtis v. Heflin, 19 Ala.App. 222, 96 So. 459 (1923); Rice v. Simpson, 274 F.Supp. 116 (M.D.Ala. 1967), Smith v. United States, 297 F.Supp. 131 (W.D.Mo.1968) and People v. Johnson, 60 Mich.App. 371, 230 N.W.2d 438 (1975). Appellee urges support for its position in Bozza v. United States, 330 U.S. 160, 67 S.Ct. 645, 91 L.Ed. 818 (1947); Cisson v. United States, 37 F.2d 330 (4th Cir. 1930); DeMaggio v. Coxe, 70 F.2d 840 (2 Cir. 1934); Kelley v. United States, 235 F.2d 44 (4th Cir. 1956); Kroll v. United States, 433 F.2d 1282 (5 Cir. 1970); Nichols v. United States, 106 F. 672 (8 Cir. 1901); North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); Oxman v. United States, 148 F.2d 750 (8th Cir. 1945); Rowley v. Welch, 72 App.D.C. 351, 114 F.2d 499 (Ct.App.D.C.1940); United States ex rel. Jones v. Commonwealth of Pennsylvania, 218 F.Supp. 689 (W.D.Pa.1963); United States v. Benz, 282 U.S. 304, 51 S.Ct. 113, 75 L.Ed. 354 (1931); Vincent v. United States, 337 F.2d 891 (8th Cir. 1964), cert. denied 380 U.S. 988, 85 S.Ct. 1363, 14 L.Ed.2d 281 (1964); Walton v. United States, 92 U.S. App.D.C. 26, 202 F.2d 818 (Ct.App.D.C. 1953); Williams v. United States, 422 F.2d 1318 (5th Cir. 1970).
In State v. Heflin, supra, a question related to the one now under consideration was discussed and a determination thereof forecast as a matter of dictum. However, the case was decided on a matter not involved here, that is, that the trial court was in error in attempting to set aside a sentence in that it was acting after expiration of the term in which the sentence was imposed, and for that reason had no jurisdiction to set aside the sentence. Of some value to appellant on the point now presented is dictum in Heflin as follows:

*1385 "Moreover, we doubt that a court could, even during term time, annul and set aside a judgment of conviction in a criminal case after the defendant had paid the fine and cost or had served the punishment inflicted; though we do not decide this question, because it is not now necessary to decide it. . . . Hence a final judgment having been rendered by a court of competent jurisdiction, and that judgment having been fully satisfied, the court cannot, at a subsequent time, cancel and annul that judgment and require the defendant to stand another trial or inflict a different punishment upon him for the same offense. There can be no question that the defendant was put in jeopardy, which is conclusively evidenced by the final judgment of December 14, 1922; and certainly the same court that put him in jeopardythat pronounced him guilty, that imposed a finecannot, after the fine is satisfied, place him upon trial again for the same offense in the same court, or inflict a different punishment than that which the defendant has answered and satisfied."
Notwithstanding the express basis for the ruling in Heflin, the expiration of the term in which the sentence was imposed, the court strongly indicated that its decision would have been the same even if the term of court had not expired, and in doing so cited with approval People v. Meservey, 76 Mich. 223, 42 N.W. 1133 as "a case somewhat similar to this," and said as to Meservey:
". . . The defendant pleaded guilty to a charge of burglary and was sentenced to imprisonment for five years; and on the subsequent day the defendant was brought into court and an order entered that it appearing to the court that the sentence theretofore pronounced was imposed under a misapprehension of the facts, the order and judgment of sentence was set aside. It was also recited in the order that no part of the judgment or sentence of the court had been inflicted; but the Supreme Court on appeal held that the original sentence had gone into effect, and that one day of imprisonment had passed; and that the circuit judge had no power to vacate the sentence; that the action of the judge of that court was not a case of amending the judgment in accordance with the facts, but was entering another judgment upon a different state of facts. . . ."
Meservey, we think, is more nearly similar than Heflin to the case now before this Court.
In People v. Johnson, supra, the trial court was affirmed as to its right to increase the sentence previously imposed on the ground that the previous sentence was "erroneous because it was based upon an offense to which defendant had not pled guilty." In resentencing defendant it was necessary to increase the sentence in order to come within the statutory limits for the particular crime to which defendant had pleaded guilty. The court distinguished the case from People v. Meservey, after stating:
". . . We are cognizant of the general rule that once a valid sentence is imposed upon a defendant, the trial court loses the power to vacate that sentence and impose a new one. . . ."
Rice v. Simpson, supra, relied upon by appellant has some language therein favorable to appellant, but the facts and the points involved therein are so different from the instant case that it does not constitute a precedent for us. The district court denounced the "imposition of harsher treatment on prisoners solely because they successfully pursue available post-conviction remedies" and held that such action violated petitioner's constitutional rights. The judgment of the district court was affirmed in Simpson v. Rice, 396 F.2d 499 (5 Cir. 1968) and upheld in North Carolina v. Pearce (Simpson v. Rice), 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).
In Smith v. United States, supra, the court said:
". . . The general rule is that `it is not within the power of the court to increase a sentence when punishment has already been suffered under the original sentence. (emphasis added). Crowe v. *1386 United States (C.A. 6, 1952) 200 F.2d 526; Frankel v. United States (C.A. 6, 1942) 131 F.2d 756. In the case of petitioner, however, no punishment had been suffered under any lesser previous sentence for the same offense when the original and final sentence was imposed on July 26, 1968. . . ."
All of the cases relied upon by appellee, other than the cases cited and relied upon by appellant, are cases in the courts of the United States. In United States v. Benz, supra, though the court spoke to the question whether the trial court could increase or augment a sentence previously imposed at the same term, such question was not directly involved. The question was whether the sentence could be decreased, which was answered emphatically in the affirmative. The court quoted from Wharton, Criminal Pleading and Practice, 9th Ed., § 913, as follows:
"As a general practice, the sentence, when imposed by a court of record, is within the power of the court during the session in which it is entered, and may be amended at any time during such session, provided a punishment already partly suffered be not increased."
In Bozza v. United States, supra, defendant had been sentenced to imprisonment for a crime for which the mandatory penalty was both fine and imprisonment. About five hours after the sentence, while defendant was still under detention awaiting transportation to the penitentiary, he was resentenced, whereby a one hundred dollar fine was imposed, as required by law, along with the imprisonment sentence. The court held that the action of the trial court was valid, that it did not constitute "double jeopardy as we have heretofore considered it" and further said:
". . . If this inadvertent error cannot be corrected in the manner here used by the trial court, no valid and enforceable sentence can be imposed at all.. . ."
Appellee places great emphasis and reliance upon Nichols v. United States, 106 F. 672 (8th Cir. 1901), stating that it is a "case of almost identical circumstances as the instant case." We find the circumstances materially different, notwithstanding the portion of the opinion especially relied upon by appellee as follows:
". . . The extent of the punishment to be inflicted on the defendant, within the limits prescribed by the statute for the offense, rested in the sound judicial discretion of the court. The imposition of the first sentence did not put an end to the exercise of this discretion. The first sentence was not recorded. The defendant had not yet left the bar, and had not yet satisfied or suffered any part of the punishment thereunder, when it was set aside and the second sentences imposed. Under these conditions, it was competent for the court to reconsider its sentence and impose a different one. . . ."
The circumstances surrounding the questioned action of the trial court are shown by the following quotation in the opinion from the "Bill of Exceptions" in the case:
"The defendant was brought to the bar of the court, and, being inquired of as to whether he had anything further to say why the sentence of judgment should not be pronounced upon him, answered in the negative; and the court called the defendant's counsel, who approached the bench, and the court inquired of counsel whether it was his purpose to prosecute the matter any further, and, understanding that it was not, the court stated that he would enter a fine of one hundred dollars against the defendant, and give him a jail sentence of six months. Thereupon counsel said that he intended to prosecute an appeal or writ of error to the appellate court on the case, and the court called the defendant up, who was still within the bar, and directed the clerk to enter a sentence of a fine of one hundred dollars on execution, and that the defendant be confined in the jail of Iron County, Missouri, for a term of twelve months."
Of significance also is the following portion of the opinion:
*1387 ". . . The Bill of Exceptions does not show that the first sentence was set aside, and the second imposed, doubling the period of imprisonment, because the defendant had declared his intention of appealing the case. A new sentence, with enhanced punishment, based upon such a reason, would be a flagrant violation of the rights of the defendant. It would be the infliction of a penalty for the exercise of a clear legal right, and would call for the severest censure. But no such motive can be imputed to the court below. This court is bound to presume that the lower court, in recalling its first and imposing its second and more severe sentence, did so from right and proper motives, and for the purpose of imposing a punishment which, upon reflection, it deemed better suited to the offense."
We note some of the circumstances in the instant case different from those in Nichols. In Nichols that which is referred to as the "first sentence" was not recorded; in the instant case it was recorded. In Nichols the "first sentence" was not as positively and finally pronounced as in the instant case; it appeared to result from an almost instantaneous change of mind, which the court on appeal felt impelled it to presume that the trial court "upon reflection" thought was not severe enough and deemed the "second sentence" better suited to the offense.
Nichols, supra, is not decisive of the issue here. One of the contentions therein, that the severer sentence was inflicted by the trial court for an improper motive, is not involved here. It is crystal clear that in this case the trial judge was acting in the noblest tradition of the judiciary in endeavoring to make the punishment ultimately imposed just and fair under all the circumstances.
The most recent cases relied upon by appellee are Vincent v. United States, 337 F.2d 891 (8th Cir. 1964), cert. denied 380 U.S. 988, 85 S.Ct. 1363, 14 L.Ed.2d 281, reh. denied, 381 U.S. 947, 85 S.Ct. 1775, 14 L.Ed.2d 713, and Williams v. United States, 422 F.2d 1318 (5th Cir. 1970), which hold, along with other cases in the courts of the United States, that a sentence can be increased or augmented if at the time the prisoner has not "commenced the service of sentence." However, such holding appears to be predicated upon a federal statute. As stated in Vincent:
"18 U.S.C.A. § 3568 provides that sentence of imprisonment of any person convicted of an offense in a court of the United States shall commence to run from the date on which such person is received at the penitentiary, reformatory or jail for service of said sentence, and further that if such person shall be committed to jail or other place of detention to await transportation to the place at which his sentence is to be served, his sentence shall commence to run from the date on which he is received at such jail or other place of detention. Here, the defendant had not been committed to a jail or other place of detention to await transportation to the place at which his sentence was to be served. As a matter of fact, he had already been told to report to the Marshall, and after a brief conference with counsel the court recalled defendant before the bench to correct the sentence. . . ."
The federal statute on the subject is not, and does not purport to be, applicable to cases other than those in the courts of the United States. The Legislature of Alabama has not standardized, as has the Congress, the time and place from and at which a sentence commences to run. Such a standardization that would work well in one state or nation would not necessarily do so in another. Furthermore, the physical facilities and number of the clerical and other personnel of both the courts and the executive branch vary greatly in the sixty-seven counties of Alabama so as possibly to forbid the establishment of a definite point at which a sentence commences as does the federal rule.
In United States v. Pennsylvania, supra, relied upon by appellee, the court held that a defendant's sentence could be increased even after he had commenced service of his *1388 sentence, but in so holding the court made it clear that it was governed solely by the law of Pennsylvania on the subject.
Even before the determination in Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), that the double jeopardy prohibition of the Fifth Amendment to the Constitution of the United States applies through the Fourteenth Amendment to cases in state courts, serious attention was given in some of the states to the question whether the imposition of a severer sentence than one previously imposed constitutes double jeopardy. In State v. Matlack, 49 N.J. 491, 231 A.2d 369 (1967), the court in upholding the correction of "an inadvertent clerical-type error," said:
"Under the common law a judge could not increase or decrease a sentence once it had gone into operation. State v. Addy, 43 N.J.L. 113, 116 (Sup.Ct.1880). Our R.R. 3:7-13(a) modifies the common law by allowing a trial judge to reduce or change a sentence within time limitations, but does not empower him to increase sentences. Cf. State v. Laird, 25 N.J. 298, 307, 135 A.2d 859 (1957). A rule which purported to allow a trial judge to increase a sentence previously imposed would raise serious problems under the constitutional right to be free from double jeopardy. See, United States v. Benz, 282 U.S. 304, 307-310, 51 S.Ct. 113, 75 L.Ed. 354, 356-358 (1931); Ex parte Lange, 18 Wall. 163, 173, 21 L.Ed. 872, 878 (1874); United States v. Rosenstreich, 204 F.2d 321 (2d Cir. 1953); State v. Laird, supra, 25 N.J. at p. 312, 135 A.2d 859; State v. Tyler, 88 N.J.Super. 396, 405-406, 212 A.2d 573 (App.Div.1965), cert. den. 384 U.S. 992, 86 S.Ct. 1898, 16 L.Ed.2d 1008 (1966)."
In State v. Pratts, 145 N.J.Super. 79, 366 A.2d 1327, 1336, in vacating an increase in a sentence, it was stated:
"At common law a sentence could be increased at any time during the term of the court in which the judgment was rendered, but not after defendant entered upon the execution of a legal sentence. State v. Matlack, supra; State v. Laird, 25 N.J. 298, 304-305, 135 A.2d 859 (1957). However, we know of no New Jersey case in which a sentence was increased."
In State in Interest of C. B. a Juvenile, 163 N.J.Super. 215, 394 A.2d 414, 415, it is stated:
"It is well established that an adult criminal sentence cannot be modified to impose a new and different sentence increasing defendant's punishment. State v. Laird, 25 N.J. 298, 135 A.2d 859 (1957); State v. Matlack, 49 N.J. 491, 231 A.2d 369 (1967); State v. Pratts, 145 N.J.Super. 79, 366 A.2d 1327 (1975), aff'd o. b. 71 N.J. 399, 365 A.2d 928 (1975).
"R. 3:21-10 which authorizes the criminal court to change or reduce a sentence, has been interpreted to permit the court to reconsider leniency only and does not authorize a trial judge to increase a sentence previously imposed. Matlack, supra. There the court reasoned that a rule which purports to allow a trial judge to increase a sentence previously imposed would raise a serious constitutional problem, i. e., the right to be free from double punishment for the same conviction. Matlack, Laird and Pratts, all supra."
Probably the case in which the circumstances are most nearly in point is that of Troupe v. Rowe, Fla., 283 So.2d 857 (1973), in which it was held that, where a voluntary plea of guilty was entered and sentence imposed and hearing concluded, jeopardy had attached and sentence which had been imposed could not thereafter be increased. Some of the circumstances are shown by the following part of the opinion:
"In the instant case, the fact reflect that a voluntary plea of guilty was entered and sentenced imposed and the hearing concluded. The record also indicates that there was no further contemplated hearing for that day in the cause; thus the matter was concluded for all purposes. Only then did a second assistant state attorney choose to inject himself into the case, to `take up the cudgel' anew and to re-argue the presentence issue of adjudication vs. `finding' of guilt upon which *1389 the trial judge had already emphatically ruled. Such indulgence is not the state attorney's privilege under these circumstances, nor can the court allow it. ..
"Jeopardy had attached in petitioner's case and the sentence which had been imposed could not thereafter be increased (as the second assistant state attorney's position would do) in violation of defendant's constitutional guaranty not to be twice placed in jeopardy."
In Leonard v. State, Miss., 271 So.2d 445 (1973), in dealing with provisions of the Mississippi Probation and Parole Act, the court said:
"After a careful review of the Code sections involved, 4004-23 and 4004-25, supra, and authorities cited, we hold that once a circuit or county court exercises its option to impose a definite sentence it cannot subsequently set that sentence aside and impose a greater sentence."
There seems to be little, if any, authority for a resentence increasing the severity of punishment after commencement of the service of the sentence previously imposed.
"It has often been said that a trial court is without power to set aside a sentence after the defendant has been committed thereunder and to impose a different sentence increasing the punishment, even at the same time at which the original sentence was imposed. A judgment that attempts to do so is void, and the original judgment remains in force. A fortiori, after a sentence has been partly executed, it cannot be changed so as to increase the punishment after the end of the term of court at which the sentence was originally rendered." 21 Am.Jur.2d Criminal Law, § 570.
It appears that by referring to the time "that a defendant commences service of a sentence," the time "the sentence has commenced to run," and the time "his sentence has gone into operation," authorities mean the same thing, but they are not in complete accord as to when such time begins as is shown by 21 Am.Jur.2d Criminal Law § 573:
"It cannot be said that a defendant commences service of a sentence merely by reason of the fact that a sentence is pronounced by the court. But when the defendant is delivered to the custody of the executive officers of the government and committed to imprisonment under the sentence, there is no doubt that the sentence has commenced to run. And some cases hold that when a defendant, sentenced to the penitentiary, is delivered to the sheriff and placed in jail for transportation to prison, his sentence has gone into operation.
"The time when a sentence begins to run may, of course, be regulated by statute."
As indicated above, the Legislature of Alabama has not spoken positively and emphatically upon the subject. However, we should note that Code 1975, § 14-6-12 provides:
"When a convict is sentenced to confinement in the county jail on two or more convictions, the imprisonment on the second, and on each subsequent conviction, must commence at the termination of imprisonment on the preceding sentence."
And to conclude therefrom that in such an event, if the power of the court to increase the sentence continued until the defendant commenced the sentence, the court could increase such sentence many months after the sentence, months after the right of appeal had expired. Also, and with like results, is Ala.Code 1975, 14-3-38(a):
"When a convict is sentenced to imprisonment in the penitentiary on two or more convictions, unless it is specifically ordered in the judgment entry that such sentences be served concurrently, such sentences shall be cumulative and shall be served consecutively, the first term thereof beginning to run from the date on which such prisoner is received at the penitentiary, reformatory or jail for service of the sentence or at some place of detention to await transportation to the place where his sentences are to be served and his second and subsequent terms, each, beginning on the expiration of the preceding term. . . ."
*1390 The statement of defendant's counsel that a commitment had been signed prior to the time the initial sentence was set aside appears to be unchallenged.
It appears that, according to the federal statute governing procedure in the United States courts, the initial sentence had not commenced at the time it was set aside. It could with reason be argued also that, according to logical analysis, it had not commenced, but we are far from certain that such is true.
As previously indicated, the practice in the several counties of Alabama as to the handling of defendants in court, whether confined to jail or on bail, the handling of them by court attaches and sheriffs' (executives) personnel, inter sese, varies greatly, and the demarcating line is not always to be found at any specific threshold. After a sentence is imposed, it often depends upon what other business is immediately before the court: whether an application for probation will be filed, whether defendant will be admitted to bail and the amount thereof, when and where defendant will be allowed to talk with his attorney or relatives or friends, and the length of time after the sentence was imposed. Except for the fact that defendant was in the courtroom between the time of the imposition of the sentence and the statement by the trial judge that he would set aside the sentence, the exact status of defendant, that is, whether he was in the custody of court attaches on the one hand or the sheriff's deputies on the other, court attaches usually but not always being also deputies of the sheriff, is hazy. Although the record shows that "immediately after" the sentence, the information came to the court from the Assistant District Attorney prosecuting the trial of the case as to defendant's previous record, approximately four hours intervened, a large part of it constituting the noon recess, before the announcement by the court was made that "the sentence will be suspended and will be rendered on December 15, 1978, at 9:00 A.M."
There is not involved here any question as to the finality and conclusive nature of the initial sentence, or any question as to the difference between the rendition and the entry of the judgment sentencing defendant. The sentence was imposed and pronounced, after allocution, as shown by the reporter's transcript quoted herein above. Its entry of record, is shown by the following from the record before us:
"This the 3rd day of November, 1978, the said defendant being in open Court with his attorney and being asked by the Court if he had anything to say whether the judgment of the Court and sentence of the Law should not be pronounced upon him says, `I'm not guilty.' It is therefore considered by the Court, and it is the judgment of the Court, that said defendant is guilty of robbery as charged in the indictment, in accordance with the verdict of the jury in this cause, and it is the judgment of the Court and sentence of the Law that defendant, the said Frank Tyrone Brown, be imprisoned in the Penitentiary of the State of Alabama for a term of ten (10) years. It is hereby ordered that the defendant be credited with all of his actual time spent incarcerated in the Jefferson County jail pending trial of this cause unless he was serving time for another offense.
"It is further considered by the Court that the State of Alabama have and recover of the said defendant the cost in this behalf expended, including the cost of feeding the defendant while in jail.
"This the 3rd day of November, 1978, it is ordered by the Court that the sentence in this case be and the same is hereby set aside. Additional information being brought to the attention of the Court immediately after sentencing and before the defendant left the courtroom concerning the defendant's previous record which the Court did not know about. A pretrial report is requested from the Probation Office of Jefferson County by December 15, 1978, at 9:00 A.M.
"This the 15th day of December, 1978, this case is passed until January 12, 1979."
*1391 It is more consonant, we think, with the spirit of the concept of due process of law and the prohibition of double jeopardy, to say that when a valid sentence has been imposed, deliberately and intentionally, formal allocution has been conducted, and judgment of conviction and sentence entered of record, it cannot, in the absence of fraud or another reason more compelling than one presented by the circumstances in the instant case, be so changed at any time thereafter as to increase the severity of the sentence, rather than to make a time limit thereon dependent upon the vagaries of when the sentence commences to run.
The particular controverted factual issue was as to the identity of the person who robbed the alleged victim. Although she first named the brother of the defendant as the robber, she explained that she had confused the names of the two brothers and testified to the effect that she was positive that it was defendant. The brother whom she named as the robber died before the robbery. Defendant presents some evidence tending to show an alibi, but the issue as to his guilt was clearly one for the jury.
We find no error in the record that would justify a disturbance of the verdict and judgment of conviction. The judgment of conviction should be affirmed, but the second sentence should be vacated and the initial sentence reinstated.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court. The judgment of conviction is affirmed, but the cause is remanded to the circuit court with directions that the trial judge enter an order vacating the second sentence and reinstating the initial sentence.
AFFIRMED IN PART; REMANDED WITH DIRECTIONS.
All the Judges concur, except DeCARLO, J., concurs in the result only.

On Remandment
LEIGH M. CLARK, Retired Circuit Judge.
AFFIRMED.
TYSON, DeCARLO, BOOKOUT and BOWEN, JJ., concur.