506 So.2d 368 (1986)
Wilson WILLIAMS
v.
STATE.
3 Div. 505.
Court of Criminal Appeals of Alabama.
November 25, 1986.
Rehearing Denied December 30, 1986.
On Remand April 14, 1987.
Benjamin E. Pool, Montgomery, for appellant.
Charles A. Graddick, Atty. Gen., and James B. Prude, Asst. Atty. Gen., for appellee.
*369 BOWEN, Presiding Judge.
Wilson Williams was indicted for the murder of Emma Lee Davis, convicted of manslaughter, and sentenced to ten years' imprisonment.

I
The defendant argues that the court erred by disallowing evidence that the victim had a reputation for carrying a weapon, see C. Gamble, McElroy's Alabama Evidence § 63.01(2) (3d ed. 1977). The evidence was admitted, however, during the following testimony of the defendant:
"Q [By Defense Counsel]: You testified she did have a reputation
"A [By Defendant]: Yeah.
"Q for carrying a pistol or weapon?
"A Yeah.
"MR. JAMES [Assistant District Attorney]: Objection. That's not what he testified to. And I would is [sic] ask the answer be stricken.
"THE COURT: Well, I sustained it on the ground that the proper predicate has not been laid to get the testimony in." (R. 180)
The question was answered before the State's objection and, although there was a motion to strike the answer, the court never ruled on the motion or excluded the answer from the jury's consideration. See Chambers v. State, 356 So.2d 767, 768 (Ala. Cr.App.1978). Evidence of the victim's reputation for carrying a pistol was, therefore, before the jury and the defendant's complaint is groundless. Evidence to the same effect was also admitted during the testimony of defense witness Helen Cooper at R. 136.
"(BY MR. POOL [Defense Counsel]: Continuing)
"Q All right. Based on what you heard people in the community say about her, did she have a reputation as being one who carried a gun?
"A Yes.
"MR. JAMES: Objection.
"THE COURT: Sustained.
"MR. JAMES: Don't answer when
"THE COURT: Sustained."
II
The defendant maintains that the trial court's refusal to charge the jury on criminally negligent homicide was error. The evidence was in dispute, but, even taken in the light most favorable to the defendant, it did not afford a rational basis for a conviction of the lesser included offense of criminally negligent homicide.
The defendant testified that, during an argument at Cooper's Lounge in Montgomery, the victim kicked him in the chest and he sprawled backwards onto a pool table. The defendant told the victim not to put her feet on him again and the victim threatened him, saying, "If I pull mine I'm going to use it." When the defendant tried to get away, the victim grabbed him and put her hand into her purse. According to the defendant, he drew his gun intending to hit the victim to make her release her hold on him and did not intend to pull the trigger. The gun discharged and the victim was killed by a single shot to the head.
Under this version of the facts, the defense theory was either self-defense or accident. See Lawson v. State, 476 So.2d 116, 118 (Ala.Cr.App.) cert. quashed, Ex parte Lawson, 476 So.2d 122 (Ala.1985); Wakefield v. State, 447 So.2d 1325, 1327 (Ala.Cr.App.1983). "Although an accidental killing may support a conviction for negligent homicide, Ex parte Weems, 463 So.2d 170 (Ala.1984), `[a] killing is not accidental when the act causing death is done intentionally.' Phelps v. State, 435 So.2d 158, 165 (Ala.Cr.App.1983)." Lawson v. State, 476 So.2d at 118.
The distinction between reckless conduct amounting to manslaughter and criminally negligent conduct amounting to criminally negligent homicide is explained in the commentary to § 13A-2-2, Code of Alabama (1975):
"A common denominator in both is that in each instance the underlying conduct must involve a `substantial and unjustifiable risk' that a result or circumstance described in the penal statute will occur or exists. The reckless offender is *370 aware of the risk and `consciously disregards' it. On the other hand, the criminally negligent offender is not aware of the risk created (`fails to perceive') and, therefore, cannot be guilty of consciously disregarding it."
Even under the defendant's version of the facts, he could not be guilty of simply "fail[ing] to perceive" the risk that the gun might fire. "One who intentionally draws a gun in response to or in anticipation of a confrontation with another is certainly aware of the risk that the gun might discharge; therefore, he cannot be guilty of mere criminal negligence." Robinson v. State, 441 So.2d 1045, 1047 (Ala.Cr.App. 1983). See also Wiggins v. State, 491 So.2d 1046 (Ala.Cr.App.1986).
The fact that the defendant had had several drinks before the fatal encounter with the victim did not entitle him to a charge on criminally negligent homicide. Even if he had been intoxicated, that circumstance would not have been legally sufficient to render him unaware of the risk he created by drawing his pistol. Ala.Code 1975, § 13A-3-2(b). ("When recklessness establishes an element of an offense and the actor is unaware of a risk because of voluntary intoxication, his unawareness is immaterial in a prosecution for that offense.") Voluntary intoxication can never, therefore, reduce manslaughter to criminally negligent homicide. "Voluntary intoxication... cannot negate awareness of a risk, if recklessness is sufficient to establish the offense." Ala.Code, 1975, § 13A-3-2 (Commentary).

III
There was no error in the court's disallowing the following question on cross-examination of a State's witness: "Would it surprise you to learn that [the victim] had a reputation for carrying a gun?" "The victim's bad general reputation for peace and quiet, violence or like trait is admissible only if the evidence before the trial court, at the time such general reputation is offered, tends to show that the accused acted in self-defense." C. Gamble, McElroy's Alabama Evidence § 33.01(2) (3d ed. 1977). See also id. at § 63.01(2). At the time defense counsel asked the question there was no evidence of self defense.
There was also no error in sustaining the State's objection to the following question asked of the same State's witness: "You didn't actually see Wilson Williams deliberately pull a trigger, did you?" A witness may not testify to the uncommunicated mental operation or intent of another. Fincher v. State, 211 Ala. 388, 100 So. 657 (1924); Flanagan v. State, 369 So.2d 46, 50 (Ala.Cr.App.1979); Whigham v. State, 20 Ala.App. 129, 101 So. 98 (1924).
"The existence of premeditation and deliberation must be determined from the particular facts and individual circumstances of each case.
"`There is no possible state of facts from which the law presumes their concurrence and coexistence is not a fact to which a witness, or any number of witnesses, can testify. It is a matter of inference from all the facts and circumstances of the particular case.' Coats v. State, 253 Ala. 290, 294, 45 So.2d 35 (1950)."
Young v. State, 428 So.2d 155, 158 (Ala.Cr. App.1982) (emphasis added).

IV
Defense counsel requested the issuance of an instanter subpoena and moved for a continuance on the ground that a defense witness who had been previously served with a subpoena did not appear at trial. After ascertaining that counsel expected the witness's testimony to corroborate the defendant's self-defense theory, but that there was at least one other defense witness who was expected to give similar testimony, the court stated: "At sometime during the trial if I find that your client is gravely prejudiced by this witness not being here, I will have the sheriff go out and try to pick him up." Counsel never redirected the court's attention to the absent witness at any later point in the trial and we must assume that he, therefore, acquiesced in the trial court's action. See Brinks v. State, 500 So.2d 1311 (Ala.Cr.App.1986); Henry v. State, *371 468 So.2d 896, 901 (Ala.Cr.App.1984), cert. denied, 468 So.2d 902 (Ala.1985). There was no abuse of discretion in denial of the motion for continuance. Barton v. State, 494 So.2d 943 (Ala.Cr.App.1986) (testimony of absent witness would have been cumulative).

V
The photographs of the victim were properly admitted into evidence. Photographic exhibits are admissible even though they may be cumulative, Washington v. State, 415 So.2d 1175, 1181 (Ala.Cr. App.1982), demonstrative of undisputed facts, Craft v. State, 402 So.2d 1135, 1138 (Ala.Cr.App.1981), or gruesome, McKee v. State, 33 Ala.App. 171, 176, 31 So.2d 656, cert. denied, 249 Ala. 433, 31 So.2d 662 (1947). As long as the exhibits tend to shed light on the issues being tried, their admission is within the sound discretion of the trial judge. Thornton v. State, 369 So.2d 63 (Ala.Cr.App.1979). "Photographs which show wounds on a victim's body which tend to corroborate the testimony of a toxicologist as to the number and location of the wounds are admissible." Washington v. State, 415 So.2d at 1180. There was no abuse of discretion in admitting the exhibits.

VI
The defendant contends that the chain of custody of a pistol introduced as the murder weapon was not proven. On direct examination of Montgomery police officer L.O. Perdue, the State established that the pistol was obtained from the defendant pursuant to a consensual search of the defendant's car. Officer Perdue stated that the weapon shown to him at trial had the same serial number as the pistol recovered from the defendant's vehicle. The pistol was admitted without objection. Then, on cross-examination defense counsel ascertained that officer Perdue had not maintained continuous care, custody and control of the firearm up to the time of trial. Officer Perdue conceded that the pistol had, at one time, been in the custody of the Department of Forensic Sciences. Defense counsel then moved to exclude the evidence for lack of a proper predicate.
"`To warrant the reception of an object in evidence against an objection that an unbroken chain of custody has not been shown, it is not necessary that it be proved to an absolute certainty, but only to a reasonable probability, that the object is the same as, and not substantially different from, the object as it existed at the commencement of the chain. Dennison v. State, 259 Ala. 424, 427, 66 So.2d 552 (1953); Mullins v. State, 56 Ala.App. 460, 323 So.2d 109 (1975); Jemison v. State, 40 Ala.App. 581, 120 So.2d 748 (1960).' Sexton v. State, 346 So.2d 1177 (Ala.Cr.App.), cert. den., 346 So.2d 1180 (Ala.1977)."
Clark v. State, 451 So.2d 368, 371-72 (Ala. Cr.App.1984). In the absence of a suggestion of tampering, the State need not negate the most remote possibilities of alteration, substitution or interference with the evidence. Shute v. State, 469 So.2d 670, 674 (Ala.Cr.App.1984).
Moreover, in view of the fact that the defendant testified to possession and use of the pistol on the date in question, and admitted that the victim's death was caused by the weapon, we fail to see how admission of the pistol, even with a missing link in the chain of custody, could have harmed him. A.R.A.P. 45.

VII
At the sentencing hearing, the State requested restitution in the amount of $3,583.34. The trial court asked defense counsel whether he "wanted a hearing on it." Defense counsel stated that he had not been "provided any details," needed to "go over the documentation," and desired a hearing. Counsel indicated that, after having seen the documentation, he might be able to waive the presence of the defendant at a restitution hearing.
One week later, in the absence of the defendant and defense counsel, the court ordered restitution in the amount requested by the State. The court noted for the record at 9:05 a.m. that he had given defense counsel due notice that the restitution *372 hearing would be held that day at 8:30 a.m., and that counsel had failed to appear.
Section 15-18-67, Code of Alabama 1975, provides that the court "shall hold" a restitution hearing to determine pecuniary loss to a crime victim, at which time "[t]he defendant, the victim or victims, or their representatives ... as well as the district attorney shall have the right to be present and be heard upon the issue of restitution...." (emphasis added) See also Rule 10(a)(5), Ala.R.Crim.P.Temp. ("[Restitution]... shall be determined by the court from evidence presented at the sentence hearing if not stipulated by the parties.")
Because a defendant has the right to the presence of counsel at sentencing, Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967); Ex parte Anderson, 434 So.2d 737 (Ala.1983), the court may not proceed without counsel or a waiver of counsel.[1] In the absence of defendant's waiver of counsel or a stipulation by the parties as to the amount of restitution, neither of which appears of record here, the trial court was not authorized by the constitution (U.S. Const.Amend. VI) or by statute (Ala.Code, § 15-18-67) to order restitution in the absence of the defendant and his attorney. Although the defendant did not, as the State points out, file any post-sentencing objection to the order of restitution, the denial of counsel claim could be advanced in a collateral proceeding on petition for writ of error coram nobis. In an effort to resolve the issue sooner, rather than later on collateral review, cf. Delevie v. State, 454 So.2d 1044 (Ala.Cr.App.1984), we direct the court to conduct a restitution hearing despite the failure to preserve the issue below. The trial court shall hold a hearing, at which defendant shall be represented by counsel, to determine the amount of restitution.
JUDGMENT OF CONVICTION AFFIRMED; REMANDED WITH DIRECTIONS TO CONDUCT A HEARING ON THE MATTER OF RESTITUTION.
TYSON, TAYLOR and PATTERSON, JJ., concur.
McMILLAN, J., dissents without opinion.

ON REMAND
BOWEN, Presiding Judge
On remand the circuit court held a restitution hearing as this Court directed in its original opinion. Therefore, the judgment of the circuit court is affirmed.
OPINION EXTENDED; AFFIRMED.
All Judges concur.
NOTES
[1] While the trial judge retains full disciplinary control over the attorneys who practice before him and may censure or reprimand lawyers who are late or who fail to appear for scheduled hearings, he may not disregard a criminal defendant's Sixth Amendment right to counsel. See Simmons v. State, 129 Ala. 41, 29 So. 929 (1901) (when defense counsel failed to appear for announcement of jury verdict, trial court made an effort to locate counsel and then appointed substitute counsel).